UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Cause 1:14CR10 SNLJ (SPM) |
| ) | |
| ) | |
| JASON D. THORNE, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the Memorandum filed herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence [Doc. 23] be **DENIED.**

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Trial in this case has been set on **July 17, 2014** at **3:30 P.M.** before the Honorable Stephen N. Limbaugh, Jr.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of June, 2014.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Cause 1:14CR10 SNLJ (SPM) |
| | ) |
| JASON D. THORNE, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). Defendant Jason D. Thorne ("Defendant") was arrested on January 17, 2014, after fleeing from Officer Richard Altice ("Officer Altice"), a police officer from the City of Steele, who was attempting to pat Defendant down for weapons.

On March 14, 2014, Defendant filed a Motion to Suppress Evidence pursuant to Rule 12(b)(3), Fed.R.Crim.P. [Doc. 23]. Assistant United States Attorney Keith Sorrell filed a response on behalf of the United States. [Doc. 27]. An evidentiary hearing was held on April 10, 2014 in front of the undersigned. [Doc. 33]. The United States presented testimony of Officer Altice. [Doc. 33]. Defendant entered into evidence a booking photo of Defendant and a list of personal items the Defendant was wearing at the time of booking. [Doc. 33]. Defendant did not present rebuttal witnesses.

At the conclusion of the hearing, counsel requested, and were granted, additional time in which to file post-hearing briefs. The parties were granted leave to file post-hearing briefs after the filing of the transcript. On April 24, 2014, a transcript of the evidentiary hearing was filed in this matter. Defendant's post-hearing brief was filed on May 14, 2014 [Doc. 36], the United States' response to the same was filed on May 27, 2014 [Doc. 39].

Based upon the evidence adduced at the hearing on the motion to suppress and the briefs of the parties, the undersigned makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

Officer Altice is a patrolman with the Steele Police Department who began his career in law enforcement in 2010. On January 17, 2014, at around 1:10 a.m., Officer Altice and another Steele police officer, Logan Pritchett, were conducting surveillance on a house in the City of Steele in connection with an investigation unrelated to this case. Officer Pritchett was parked in an unmarked police car and Officer Altice was parked about one city block away in a marked police car. Officer Altice received a call from Officer Pritchett who reported that a white male was approaching the front of Officer Pritchett's car at a pretty decent rate and that Officer Altice should head that way.

Officer Altice drove to the area where Officer Pritchett was parked. Officer Altice parked his marked patrol control to within 125 feet of Officer Pritchett's unmarked car. Officer Altice saw a subject walking; the subject was wearing a coat with a hood over his head. When Officer Altice parked his marked patrol car, the subject immediately turned and started walking towards Officer Altice's patrol car and took his hood off. Officer Altice recognized the man as Jason Thorne, the defendant. Officer Altice was able to recognize Defendant because the area was sufficiently lit by Officer Altice's headlights and streetlights, and because Officer Altice had encountered Defendant approximately one month earlier when he investigated the possible theft

3

of some stereo equipment by Defendant's brother, Israel Whitnut. Officer Altice had heard from other officers in the Steele Police Department that Defendant was involved in the drug trade and had been convicted of a felony.

Officer Altice exited his patrol car. Defendant walked over to him and stated that he had received a phone call that there was a vehicle parked on the street outside his shop. Officer Altice replied that the vehicle next to the shop was a patrol car and there was an on duty officer in the vehicle. During this conversation, Officer Altice noticed that Defendant was using his right hand to manipulate an object in his coat pocket and there was what appeared to be a white rag or cloth hanging from the pocket. Officer Altice asked Defendant to keep his hands out of his pocket while they talked. Defendant replied, "Why are you doing this to me out here on the streets where everybody can see?" Officer Altice interpreted Defendant's statement to mean that Defendant did not want to be seen talking to a police officer. Officer Altice told Defendant that it would make him feel more comfortable if Defendant didn't place his hands in his pocket while they talked.

During this exchange, Officer Pritchett walked over and stayed just long enough to identify Defendant and make sure everything was okay; he then returned to his unmarked car. After Officer Pritchett left, Defendant continued manipulating the item in his pocket; he did so by manipulating the item from both the outside and inside of the pocket. At that point, Officer Altice asked Defendant if he was concealing anything he should not have in his possession. Defendant replied that he wanted to talk to the officer at the police department and said he would be willing to get in the car and talk to the police officer. Officer Altice replied that Defendant could get in the car but he would have to pat Defendant down for weapons first.

Officer Altice requested Defendant to place both his hands on top of his head and interlace his fingers. Officer Altice explained on the record that asking Defendant (or any other subject) to interlace his fingers on top of his head is a standard safety procedure that allows the officer to control the Defendant/subject's movements during the pat down. Defendant raised his hands but did not place them on his head or interlace his fingers. Officer Altice grabbed or touched Defendant with his left hand to try to move his hands to the top of his head to interlace his fingers;[1] however, Defendant twisted away from Officer Altice and starting running away. Officer Altice shouted for him to stop and then chased Defendant.

After chasing Defendant for about 20 feet, Officer Altice deployed his Taser. Although Defendant fell to the ground, Officer Altice did not believe the Taser had taken full effect because Defendant continued to fight back and flee. The men struggled and wound up falling into a fence. Defendant got up and continued to run. At that point, Officer Altice, who was only about four feet away, saw Defendant remove the white rag from his pocket and "chuck" the item, which Officer Altice could see was an actual pistol wrapped up in the rag. The men continued to struggle for a short while before Officer Pritchett arrived to assist Officer Altice. After the arrival of Officer Pritchett, Defendant stopped resisting and allowed himself to be handcuffed. Defendant was placed under arrest and taken to Steele Police Department for booking and then to Pemiscot County Sheriff's Office.

The officers searched the area where Defendant had thrown the gun and recovered a Ruger .357 magnum revolver.

---

[1] Officer Altice's testimony on this point varied slightly. On direct examination he testified that he "grabbed" Defendant's arm to "influence" him to move his hands to the top of his head and interlace his fingers. *See* Doc. No. 33, at pp. 19-20. On questioning by the Court, Officer Altice testified that he "touched" Defendant's elbow while instructing him to "go ahead and finish placing his hands on top of his head." *Id.* at p. 43.

## CONCLUSIONS OF LAW

### A. Defendant Was Momentarily Seized Under The Fourth Amendment When Officer Altice Grabbed Defendant's Arm To Conduct A Pat Down.

Defendant argues he was seized under the Fourth Amendment, without justification, when Officer Altice required Defendant to submit to a pat down search and then grabbed his arm to force him to place his hands on top of his head. The United States contends Defendant was not seized for Fourth Amendment Purposes when Officer Altice grabbed Defendant's arm to attempt a pat-down.

For purposes of the Fourth Amendment, seizure of a person occurs when a reasonable person would not feel "free to leave," or free to "decline the officers' requests," or "otherwise terminate the encounter." *Fla. v. Bostick,* 501 U.S. 429, 436 (1991). An encounter with an officer does not constitute a seizure unless the officer restrains the individual's liberty by means of physical force or a show of authority to which the individual submits. *See Cal. v. Hodari D.*, 499 U.S. 621, 626 (1991). Indeed, the word "seizure" in the Fourth Amendment "readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ('She seized the purse-snatcher, but he broke out of her grasp.')." *Hodari D.*, 499 U.S. at 626; *see also Conway v. Battelle*, 4:04CV569 FRB, 2006 WL 897142 (E.D. Mo. Mar. 30, 2006) (holding that a seizure occurred when an officer struck defendant with a beanbag shot from a non-lethal shotgun even though that physical forced failed to subdue him).

Citing *Hodari D.*, the United States argues that Officer Altice's grabbing of Defendant's arm and Defendant's slipping away is, at best, an attempted seizure. However, *Hodari D.* "does not stand for the proposition that a physical touching of an individual by a law enforcement officer does not constitute a seizure within the meaning of the Fourth Amendment unless that

physical touching results in a stop." *Lansdown v. Chadwick*, 152 F. Supp. 2d 1128, 1148 (W.D. Ark. 2000) aff'd, 258 F.3d 754 (8th Cir. 2001). A seizure is effected "by the slightest application of physical force' despite later escape." *United States v. Pratt*, 355 F.3d 1119, 1122 (8th Cir. 2004) (quoting *Hodari D.*, 499 U.S. at 625).

Here, there is no question that up until the point at which Officer Altice attempted to get Defendant to place his hands on top of his head, the encounter between Defendant and the officer was consensual and did not trigger the Fourth Amendment. *SeeUnited States v. Angulo-Guerrero*, 328 F.3d 449, 451 (8th Cir. 2003). Indeed, as the foregoing facts demonstrate, Defendant initiated the contact with Officer Altice by walking towards him with the purpose of seeing who was in the car parked near his property. The officers did not stop him, nor did they tell him he was the subject of any investigation. Except for a brief appearance by Officer Pritchett, Officer Altice was by himself during the initial encounter. No weapons were initially displayed by Officer Altice and there is no evidence that Officer Altice did anything to limit Defendant's movements.

However, once Defendant told Officer Altice he wanted to get into the patrol car and go down to the station to talk, Officer Altice indicated that he would need to first pat Defendant down before allowing him into the car. Officer Altice then told Defendant he would need to place his hands on top of his head and interlace his fingers. Officer Altice testified that he "requested [Defendant] to place both of his hands on top of his head." Defendant initially indicated his compliance with Officer Altice's request to put his arms up by partially raising his hands; however, Defendant did not raise his hands all the way up above his head, did not place his hands on his head, and did not interlace his fingers. When Officer Altice grabbed Defendant's partially raised arm to attempt to move his hands to the top of his head, Defendant

twisted away and fled. Irrespective of whether Officer Altice "grabbed" or "touched" Defendant's arm, he "effected the slightest application of physical force" to restrain Defendant's movement and, thus, seized Defendant.

### B. The Momentary Seizure Did Not Violate The Fourth Amendment Because It Was Based On Reasonable Suspicion.

The determination that Defendant was seized for Fourth Amendment purposes does not end the inquiry. Brief seizure by police officers that fall short of traditional arrests are governed by the Fourth Amendment and are lawful when justified by reasonable articulable suspicion that criminal activity is afoot or, in the case of a pat-down, if the officer has a reasonable belief that the detainee poses a threat to the officer's safety or the safety of others. *Terry v. Ohio,* 392 U.S. 1, 27 (1968). "In the course of such an encounter, police officers may take steps reasonably necessary to protect their personal safety." *United States v. Harris*, 747 F.3d 1013, 1019 (8th Cir. 2014) (referencing *United States v. Morgan,* 729 F.3d 1086, 1091 (8th Cir. 2013)). A step may include a limited pat-down for weapons. *Terry,* 392 U.S. at 27. The officer does not need to be certain that the suspect was armed, rather, a pat-down is permissible if a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Horton*, 611 F.3d 936, 941 (8th Cir. 2010) (quoting *Terry,* 392 U.S. at 27).

Here, Officer Altice had enough reasonable suspicion to justify his request to Defendant to submit to a pat down search to ensure the officer's safety. Officer Altice "observe[d] unusual conduct which [led] him reasonably to conclude in light of his experience that criminal activity may be afoot" and that Defendant might be armed. *Terry*, 392 U.S. at 30-31. Defendant was walking to confront an unknown car at around 1 a.m., fidgeting with an object in his pocket. Defendant was evading the officer's question about the object in his pocket. Defendant requested

8

that the Officer take him to the station in his patrol car and it was police custom for Officer Altice to conduct a weapons pat-down for anyone who rides in his patrol car to ensure his own safety. [Doc. 23 at 18]. In addition, Officer Altice was familiar with the Defendant and believed him to be a convicted felon. Thus, Officer Altice had reasonable suspicion to believe criminal activity was afoot and was "entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of [Defendant] in an attempt to discover weapons which might be used to assault him." *Terry*, 392 U.S. at 30. Defendant was seized by Officer Altice but the seizure did not violate the Fourth Amendment because the officer had a reasonable, articulable suspicion for the pat-down.

**C. Defendant's Decision To Flee Provided an Independent Ground For An Arrest And A Search Pursuant To That Arrest.**

The Supreme Court and the Eighth Circuit have held that unprovoked flight may create a reasonable suspicion in a police officer that criminal activity is afoot and will justify the stop of the suspect. *See Illinois v. Wardlow,* 528 U.S. 119, 124 (2000) (holding that unprovoked flight is an act of evasion that is a relevant factor in determining reasonable suspicion); *see also United States v. Benson*, 686 F.3d 498, 502 (8th Cir. 2012) (holding that when police officers ordered a suspect to stop, the suspect's decision to increase his speed and try to evade the officers contributed to a finding of reasonable suspicion); *see also United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010) (holding that reasonable suspicion was justified when officers witnessed the suspect's flight at the sight of police).

Here, as set out above, the evidence demonstrates that Officer Altice already had reasonable suspicion that criminal activity was afoot when he grasped Defendant's arm to conduct a pat down search. Defendant, who the officer believed to be a convicted felon, had come out late at night to investigate an unmarked parked car, kept manipulating a hidden object

9

in his pocket, and evaded Officer Altice's questions regarding the object. Despite the fact that Defendant initiated the encounter, asked to ride to the police station in the officer's patrol car, and initially consented to a pat down search for weapons, Defendant twisted away from Officer Altice's grasp and ran when the officer tried to conduct the pat down. Not only did Defendant's unprovoked flight increase reasonable suspicion in the officer that criminal activity was afoot, it created a new independent basis for arrest.

This case is similar to that of *United States v. Sledge*, which found that a defendant who ran away from a police officer who was trying to detain him, "forfeited any Fourth Amendment protection by resisting and running away from the officers, thus creating probable cause to arrest [the defendant] for obstructing a peace officer, in violation of Neb. Rev. Stat. § 28–906(1), and to search [the defendant] incident to that arrest." *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006). The Nebraska statute relevant in *Sledge* is similar to Missouri Statute § 575.150 RSMo. 2009, which provides that "A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual … the person: (1) Resists the arrest, stop or detention of such person … by fleeing from such officer." Defendant's decision to break free of Officer Altice and run away gave Officer Altice sufficient probable cause to arrest him and search him. *See Freeman v. Adams,* 1:12CV86 SNLJ, 2014 WL 1056760, *10 (E.D. Mo. Mar. 19, 2014) (holdingthat the officer had probable cause to arrest plaintiff for resisting a lawful investigatory stop by fleeing in violation of section 575.150 RSMo.).

In addition, the Eighth Circuit has found that even resistance to an illegal arrest can create grounds for legitimate arrest. *See United States v. Dawdy*, 46 F.3d 1427 (8th Cir. 1995) (holding that "even if the initial stop and arrest of defendant were invalid, defendant's resistance to arrest

10

provided independent grounds for his arrest"); *see also United States v. Schmidt*, 403 F.3d 1009 (8th Cir. 2005) (holding that the defendant's resistance to an arrest constituted a new and distinct crime and did not depend on whether the Officer's earlier actions were lawful).

In sum, Defendant's decision to run from Officer Altice provided a new, independent reason for Officer Altice to stop him. His flight created a reason for arrest. Therefore, the officers' pursuit and subsequent seizure of Defendant did not violate Defendant's Fourth Amendment rights.

### D. The Gun Was Abandoned Property And Not The Fruit Of An Unconstitutional Seizure

The United States argues that the firearm should not be suppressed because, by throwing the gun away during his flight from the officers, Defendant abandoned the gun along with any right he might otherwise have had to challenge its seizure on Fourth Amendment grounds. I agree.

The warrantless seizure of abandoned property does not violate the Fourth Amendment because individuals who voluntarily abandon property forfeit any expectation of privacy they might have had in that property. *See United States v. Segars*, 31 F.3d 655, 658 (8th Cir. 1994) (citing *Abel v. United States,* 362 U.S. 217, 241 and *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir. 1983)). "In determining whether property has been abandoned for Fourth Amendment purposes, the court must look to the totality of the circumstances, noting in particular two factors: whether the suspect denied ownership of the property and whether he physically relinquished the property." *United States v. Liu*, 180 F.3d 957, 960 (8th Cir. 1999) (citing *United States v. Landry,* 154 F.3d 897, 899 (8th Cir.1998)). In addition, "[w]hether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers,

not on the basis of the owner's subjective intent." *Id.* (quoting *United States v. Tugwell,* 125 F.3d 600, 602 (8th Cir. 1997)).

Here, Defendant physically relinquished the gun by throwing it over a fence during a police chase following a lawful seizure. The objective facts available to Officer Altice and Officer Pritchett were that Defendant was running, threw his gun away, and kept running. Based on these objective facts available to the investigating officers, Defendant clearly abandoned the gun while fleeing from police.

A finding that Defendant abandoned the gun, however, does not end the inquiry. "To fall outside of fourth amendment protection, a defendant's abandonment of evidence cannot be the product of unlawful police conduct." *United States v. Koessel*, 706 F.2d 271, 274 (8th Cir. 1983); *see also Segars*, 31 F.3d at 658 (citing *Koessel*, 706 F.2d at 274).

For the reasons previously set out above, Defendant's flight and abandonment of the gun was not the product of unlawful police conduct. Immediately before fleeing and throwing away the gun, Defendant was briefly "seized" under the Fourth Amendment. However, that momentary seizure was lawful in that it was based upon reasonable suspicion by Officer Altice that criminal activity was afoot and/or that a limited pat down search of Defendant was necessary to protect the officer's safety. That momentary seizure ended when Defendant twisted away from Officer Altice's grasp and fled. At the time Defendant threw away the gun, he was not seized; he was fleeing.[2]

---

[2] Fourth Amendment jurisprudence instructs that if someone is "seized" and then somehow gets away, the first seizure does not continue during the "period of fugitivity." *See See Hodari D.* 499 U.S. at 625 (holding "[it] is not to say that for Fourth Amendment purposes there is a *continuing* arrest during the period of fugitivity. If, for example, Pertoso had laid his hands upon Hodari to arrest him, but Hodari had broken away and had *then* cast away the cocaine, it would hardly be realistic to say that that disclosure had been made during the course of an arrest."); *Gardner v. Buerger*, 82 F.3d 248 (8th Cir. 1996) (holding [i]f someone is 'seized,' and then somehow gets

Even if the brief seizure was not supported by reasonable suspicion, for the reasons set forth above, once Defendant began to run, Officer Altice had an independent basis supported by probable cause to arrest Defendant for resisting a lawful investigatory stop or detention. In sum, in light of the foregoing, the gun was not the fruit of an unlawful search or seizure. Defendant abandoned the gun by throwing it over a fence while running away from Officer Altice. At the moment Defendant threw his gun, he was not seized and the officer had reasonable suspicion, if not probable cause, to pursue Defendant.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion to suppress evidence [Doc. 23] should be denied.

    /s/Shirley Padmore Mensah
    SHIRLEY PADMORE MENSAH
    UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of June, 2014.

---

away, the first seizure does not continue during period of fugitivity, and several distinct seizures may occur during single course of events or encounter with police"); *Ludwig v. Anderson* 54 F.3d 465 (8th Cir. 1995) (holding "*Hodari D.* instructs that many different seizures may occur during a single series of events").